**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**


STEVEN JEFF REYNOLDS                                    PLAINTIFF

V.                                                                            CIVIL ACTION NO.
                                                                              1:08cv228-SAA

MICHAEL J. ASTRUE, Commissioner of
 Social Security                                                    DEFENDANT


## MEMORANDUM OPINION

This case involves an application under § 205(g) of the Social Security Act, as amended

42 U.S.C. § 405(g), for judicial review of the decision of the Commissioner of Social Security

denying the application of plaintiff Steven Jeff Reynolds for a period of disability and disability

insurance benefits under Title II and Supplemental Security Income (SSI) benefits under Title

XVI of the Social Security Act.  The district court's jurisdiction over plaintiff's claim rests upon

28 U.S.C. § 1331.  In accordance with the provisions of 28 U.S.C. § 636 (c), both parties

consented to have a United States Magistrate Judge conduct all proceedings in this case,

including an order for entry of a final judgment.  Therefore, the undersigned has authority to

issue this opinion and the accompanying final judgment.


## PROCEDURAL HISTORY

Plaintiff protectively filed his application for disability benefits on March 30, 2005.

Plaintiff amended his alleged onset date to March 30, 2005 at the hearing before the

Administrative Law Judge [ALJ] on August 9, 2007.  On August 15, 2007, the ALJ issued his

decision denying the claim. Plaintiff's request for review by the Appeals Council was denied on August 18, 2007. The Appeals Council's denial of the petition for review perfected the ALJ's decision as the final decision of the Commissioner, which is now ripe for the court's review.

## FACTS

Plaintiff was born in 1958 and was 48 years old at the time of the hearing. He has an eighth grade education and previously worked as a band saw operator, frame builder and production supervisor. He alleges that he became disabled due to osteoarthritis, hypertension, diabetes, obesity and left wrist disorders. Plaintiff is six feet tall, and his weight has fluctuated between 317 and 360 pounds.

Medical records show that plaintiff was treated intermittently at Sherman Family Medical Clinic from 1999 to 2004 for various complaints. (Tr. 139 - 151, 157 - 160). He was examined by two consultative physicians, Drs. Landall Hathorn and Arthur Greenberg, for the Commission. (Tr. 153 - 155, 161 - 173). Also contained in the record is a medical assessment of ability to do work-related activities completed by Nurse Practitioner Deborah Whitehead. (Tr. 174 - 178). Nurse Whitehead is not a physician and therefore not an "acceptable medical source," but rather an "other medical source" under the regulations. *See* 20C.F.R. § 404.1513. Nurse Whitehead had an eight-year treatment relationship with the plaintiff at Sherman Family Medical Clinic. Plaintiff concedes that aside from Nurse Whitehead's assessment of ability to do work-related activities, there is no single medical source statement that finds him wholly disabled under the Social Security Act. Nevertheless, plaintiff argues that based on examination of all of his impairments and symptoms collectively, the ALJ's determination that plaintiff can perform a "broad range of light work" is not supported by substantial evidence and should be remanded for

further consideration.

In his decision, the ALJ determined that the plaintiff suffers from the following severe impairments: osteoarthritis, hypertension, diabetes, obesity and a history of left wrist disorders. (Tr. 12, Finding No. 2). However after review of the record and hearing testimony, the ALJ found that the plaintiff, "does not experience any impairment or combination of impairments which meets or medically equals in severity the requirements of any of the listed impairments contained within 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 416.920(d))." (Tr. 14, Finding No. 3). The ALJ next determined that the plaintiff retains the residual functional capacity (RFC) to perform a broad range of light work. (Tr. 14, Finding No. 4.) In making this determination, the ALJ, following appropriate procedures, made a finding that the plaintiff was not entirely credible. (Tr. 15) He further found that the plaintiff retained the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, could stand and walk for four hours in an eight hour work day, 30 minutes without interruption; could sit without limitation; could occasionally perform climbing, balancing, stooping, crouching, kneeling or crawling; could perform pushing and pulling to the extent of 20 pounds and could only occasionally perform handling with his left upper extremity. (Tr. 15 - 16).

Based on the entirety of the record, the testimony of plaintiff a vocational expert (VE), in combination with the plaintiff's RFC, the ALJ determined that because there are a significant number of jobs in the national economy that the plaintiff could perform, the plaintiff was not disabled under the Social Security Act.

## **DISCUSSION**

The court considers on appeal whether the Commissioner's final decision is supported by

substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[1] even if it finds that the evidence leans against the Commissioner's decision.[2] If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his

---

[1] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[2] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[3] *See* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520(2007).

burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[4]

First, the plaintiff must prove he is not currently engaged in substantial gainful activity.[5]  Second,

the Commissioner considers the medical severity of the claimant's impairment.[6]  At step three

the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are

medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1,

§§ 1.00-114.02 (1998).[7]  Fourth, the Commissioner considers their assessment of the claimant's

residual functional capacity, and the claimant  bears the burden of proving he is incapable of

meeting the physical and mental demands of his past relevant work.[8]  If the plaintiff is successful

at all four of the preceding steps the burden shifts to the Commissioner to prove, considering

plaintiff's residual functional capacity, age, education and past work experience, that he is

capable of performing other work.[9]  If the Commissioner proves other work exists which the

plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform

that work.[10]

 Plaintiff seeks reversal on three grounds:

 (1) The ALJ's decision is not supported by substantial evidence;
 (2) The ALJ failed to properly consider plaintiff's obesity in determining his residual

---

[4]  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5]  20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(a)(4)(i)(2007).

[6]  20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1520(a)(4)(ii)(2007).

[7]  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404.1520(a)(4)(iii)(2007).

[8]  20 C.F.R. § 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(a)(4)(iv)( 2007).

[9]  20 C.F.R § 416.920(a)(4)(v); 20 C.F.R. § 404.1520(a)(4)(v)(2007).

[10]  *Muse*, 925 F.2d at 789.

functional capacity or in hypothetical questions to the vocational expert in violation of Social Security Ruling 02-1p; and

(3) The ALJ failed to perform proper analysis at step three of the five-step evaluation process, and this failure was not harmless error.

<u>Substantial evidence</u>

In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

<u>Consideration of obesity</u>

According Social Security Ruling 02-1p, "[o]besity can cause limitation of function." SSR-02-1p, p. 6. Such limitations may include deterioration or impairment "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. . . .," as well as an individual's "ability to do postural functions, such as climbing, balance, stooping, and crouching." *Id.* Finally, "[t]he ability to tolerate extreme heat, humidity, or hazards may also be affected." *Id.* SSR 02-1p acknowledges that often obesity may affect an individual in a less than obvious manner – "[f]or example, some people with obesity also have sleep apnea." *Id.* Therefore the ruling requires an ALJ to assess the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work

environment, taking into account fatigue or other combined effects of obesity which, with other impairments, may be greater than might be expected without obesity.  SSR - 02-1p, p.6.  In the instant case the ALJ  mentioned plaintiff's obesity six times:

> "The record evidence demonstrates that the claimant experiences the medically determinable "severe" impairments of osteoarthritis, hypertension, diabetes, **obesity,** and a history of left wrist disorders." (Tr. 12, Finding No. 2)(emphasis added);

> "Dr. Hathorn reported on physical examination that the claimant was morbidly **obese** at 345 pounds and had a blood pressure of 175/100." (Tr. 13)(emphasis added);

> "Dr. Hathorn expressed the pertinent impression of complaints of knee pains, morbid **obesity**, and uncontrolled hypertension."  (Tr. 13)(emphasis added);

> "Nurse Practitioner Deborah Whitehead opined that the claimant could not perform sitting, standing, climbing, carrying, walking or lifting due to his morbid **obesity**, uncontrolled hypertension, and other issues."  (Tr. 13)(emphasis added);

> "Dr. Greenberg expressed the pertinent impression of osteoarthritis, **obesity,** and status post two remote left wrist fractures with post-traumatic arthralgias."  (Tr. 13)(emphasis added);

> "The Claimant has received the diagnosis of **obesity** and of hypertension, but the documentary record fails to substantiate the presence of any debilitating functional limitations which might reasonably be attributed to either of these two issues." (Tr. 15)(emphasis added).

In addition the ALJ mentioned the plaintiff's "body habitus"[11] twice in the decision, both times referring to Dr. Landall Hathorn's determination that plaintiff's range of motion in his hips and

---

[11]Dorland's Illustrated Medical Dictionary, 29th edition, does not contain a singular definition for a term "body habitus".  It defines "body" as "1. corpus. 2. any mass or collection of material. 3. a cadaver or corpse. 4. the trunk, or animal frame, with its organs." and "habitus" as "1. posture or position of the body. 2. physique; body build and construction."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 225, 780 (29th ed, 2000).

knees is limited by his size/obesity. (Tr. 13, 15, 154). Finally, ALJ twice referred to plaintiff's weight, measured in pounds, at both his May 2005 examination by Dr. Hawthorn and his May 2007 examination by Dr. Greenberg. (Tr. 13, 154, 162). Both times plaintiff's weight was in excess of 300 pounds. *Id.*

Although the ALJ did not specifically mention SSR 02-1p, he clearly considered the plaintiff's obesity at steps two and four. The ALJ's RFC determination also included postural limitations. (Tr. 15 - 16). The court agrees with plaintiff that the ALJ failed to consider, or at least discuss his analysis and consideration of, much of anything at step three, even though doing so would have been of assistance to a reviewing court. However, the ALJ specifically found that the record failed to demonstrate that there were any debilitating functional limitations attributable to plaintiff's obesity. (Tr. 15). This finding is supported by the opinions of Drs. Hathorn and Greenberg. Although the ALJ did not offer a point-by-point analysis, plaintiff's argument that the ALJ failed to properly consider plaintiff's obesity in accord with SSR 02-1p must fail.

Regarding the ALJ's hypothetical questions posed to the VE, the transcript clearly shows that the first hypothetical incorporated plaintiff's testimony regarding work restrictions and pain; hypothetical two incorporated the Nurse Practitioner's assessment; the third hypothetical included in large part Dr. Greenberg's assessment; the ALJ then added to hypothetical three limitations regarding handling with the left upper extremity mentioned in the Nurse Practitioner's assessment; and for hypothetical number four plaintiff's counsel added obesity which would not allow a person "to stoop, kneel, crouch or crawl, [including] bending in a vocational setting." (Tr. 37 - 41). In response to hypotheticals one, two and four, the VE testified that the person would be unable to return to plaintiff's past relevant work and that there

were not other jobs in significant number in the national economy that such a person could perform.  *Id.*  In response to hypothetical number three and the amended version of that question, however, the VE testified that while the hypothetical person would not be able to return to plaintiff's past work, there were other jobs in the national economy that he could perform.  (Tr. 40 - 41).  Specifically, the VE stated:

> ALJ:    Do other jobs exist in significant numbers in Mississippi and the United States which the claimant could perform?
> VE:    Yes, sir.
> ALJ:    Kindly set forth to [sic] such.
> VE:    Machine tender, example DOT code is 566.685-062.  Its light and unskilled.  With a sit or stand option, there's approximately 200,000 nationally and about 1,000 in the state; machine feeder, example DOT code is 599.686-014, also light and unskilled, approximately 75,000 nationally and 1,200 in the state.
> ALJ:    I may have neglected something.  Bear with me, please.  If we add to that hypothetical the additional issue that the claimant can only occasionally engage in handling with his left upper extremity, would that change the conclusions that you have presented with regard to hypothetical number three?
> VE:    No, sir.
> ALJ:    Would it change any of the number of jobs that you cited to us for the two jobs you've cited?
> VE:    No, sir.

(Tr. 40 - 41).  Although the plaintiff is correct that the ALJ did not ask the VE specifically about conflicts with the DOT and the cited machine tender number was incorrectly listed, the description of the jobs – light and unskilled is accurate.

The applicable standard of review relating to an apparent conflict between the testimony of a VE and the DOT is harmless error.  *Barrat v. Astrue*, 2008 WL 2325636, *2, n.1 (5th Cir. 2008)(slip op.).  In other words, error relating to this point warrants reversal and remand only where it would cast doubt as to the existence of substantial evidence to support the ALJ's

decision.  *Id.*  In this case, the simple error as to the DOT code – the VE incorrectly cited a single number but provided a job description that accurately described a job by the same name, level and requirements – is not such an error that it would warrant reversal.  Even if the job of "machine tender" is disregarded entirely, there remains evidence of another job which the plaintiff could perform.  Additionally, the record as a whole supports the ALJ's conclusion that the plaintiff is able to do a range of light work and is not disabled as defined by the Social Security Act.

*Audler v. Astrue,* and ALJ's analysis at Step Three

Citing *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), plaintiff contends that the ALJ's failure to offer any analysis of whether he met the criteria in the Listings is clear error.  In *Audler*, the ALJ concluded that the claimant did not meet the any of the listed medical impairments found in the regulations, without identifying any particular  medical impairment or providing an explanation for that conclusion.  Although the ALJ is not required to engage in a point-by-point discussion, an explanation supporting his conclusion is necessary to determine whether the decision is based on substantial evidence.  *Audler*, 501 F.3d at 448.  The Fifth Circuit cited *Clifton v. Chater*, 79 F3d 1007 (10th Cir. 1996), in holding that when Audler presented evidence that she did meet the criteria of the medical listing, the ALJ was obliged to explain why this evidence was not sufficient to support a finding of disability.  *Id.*

The Commissioner correctly notes, however, that an ALJ's failure to detail such findings at Step 3 does not necessarily require reversal as long as the ALJ makes factually supported findings at Steps 4 and 5 which eliminate "*any* concern that a claimant might have been adjudged disabled at Step 3."  *Fischer-Ross v. Barnhart*, 431 F3d 729, 733 (10th Cir. 2005).

The *Fischer-Ross* court clarified its earlier holding in *Clifton*, explaining that the principle enunciated in that case was merely to ensure adequate development of an administrative record and an explanation of the findings to permit meaningful review. *Fischer-Ross*, 431 F.3d at 734. Where an ALJ elsewhere provides detailed findings based upon substantial evidence that also support the finding at Step 3, there is no need to remand the case for further discussion of Step 3. *Id.* The court finds the *Fischer-Ross* Court's interpretation of *Clifton* persuasive and appropriately applied here as it is consistent with Fifth Circuit precedent that remand is not required unless substantial rights have been affected. *Nixon v. Astrue*, 2009 WL 586728, *2 (N.D. Miss. 2009) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

The ALJ in this case did summarily conclude that plaintiff did not "experience any impairment or combination of impairments which meets or medically equals in severity the requirements of any of the listed impairments contained within 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d))." (Tr. 14, Finding No. 3). He made this finding without specifically identifying the medical listing or providing any discussion of that conclusion, which certainly makes appellate review more difficult. He did, however, provide a detailed review and analysis of his conclusion that plaintiff was not disabled. (Tr. 14 - 17). The ALJ further found that plaintiff was not fully credible, made an RFC determination, determined that plaintiff was not able to perform his previous work, but found based upon his age, education, work experience and RFC, he was able to work in other capacities. *Id.* The ALJ appropriately relied on the VE's testimony and used the Medical-Vocational Guidelines, Section 202.19, as a framework for decision-making.

The ALJ is required to discuss the evidence and explain the basis for his findings at

each unfavorable step of the sequential evaluation process. *Audler v. Astrue,* 501 F.3d 446, 448

(5th Cir .2007). The ALJ's bare findings at Step 3 did not adequately explain the reasons for his

determination. *Audler* at 448.   Nonetheless, this omission does not require remand unless the

claimant's "substantial rights" were affected.  *Id.* (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th

Cir. 2007)).  A claimant's substantial rights are affected at Step 3 when he demonstrates that he

meets, or at least appears to meet, the requirements for a Listing. *Audler,* at 448.   In other words,

the ALJ's error may be harmless.  *Morris v. Bowen,* 864 F.2d 333, 334 (5th Cir.2007)).

      In this case, the plaintiff admits that there is not one opinion or medical source

statement – aside from that of Nurse Practitioner Whitehead – that the plaintiff is disabled.[12]

The RFC determined by the ALJ was consistent, in large part, with the opinions of both Drs.

Hathorn and Greenberg.  Both doctors concluded that the plaintiff retained the ability for a range

of light work despite his size.  In light of the ALJ's determination that the plaintiff was not

entirely credible, his properly affording lesser weight to the assessment of a nurse practitioner

and his findings that are consistent with the opinions of the examining physicians, the court

concludes that the ALJ's decision was supported by substantial evidence.  Despite the ALJ's lack

of citations to applicable standards and regulations, the ultimate determination was supported by

the record as a whole and consistent with the testimony of the VE.

      Plaintiff also claims that the ALJ erred in failing to accord proper weight to the

opinions of plaintiff's treating sources, resulting in a residual functional capacity assessment that

---

[12] Under the Social Security regulations, nurse practitioners are considered "other" medical
sources.  20 C.F.R. § 404.1513(a).  This term simply distinguishes physicians, which are
considered acceptable medical sources, and non-physician medical professionals.  *Id.  See also*
Social Security Ruling 06-3p.

was erroneous and unsupported by substantial evidence. The Fifth Circuit has very clearly stated the approach an ALJ must take in according weight to a treating physician's opinion:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). *Newton* is inapposite in circumstances such as this where there was more than one examining physician. *Qualls v. Astrue,* 2009 WL 2391402, *5 (5th Cir. 2009) (slip op.). Nor is there any dispute that the only assessment that could warrant a finding of "disabled" under the Act is that of a nurse practitioner, who is considered as an "other" source and not afforded the same level of deference as a physician.

In this case, the ALJ was free to use the opinions of Drs. Greenberg and Hathorn. Both were examining consultative physicians that had first-hand knowledge of the plaintiff's conditions and limitations, and both held opinions that were consistent with the record as a whole. The ALJ, in his discretion, afforded more weight to these opinions and lesser weight to Nurse Practitioner Whitehead. In doing so, the ALJ adequately explained his rationale for doing so. Even though the ALJ's decision does not mention 20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2), he did address the required criteria. The decision therefore applied proper legal standards and is supported by substantial evidence.

For the foregoing reasons, the court concludes that the Commissioner's final decision should be affirmed. A separate judgment affirming the Commissioner's final decision will issue simultaneously with this Memorandum Opinion.

This, the 16th day of February, 2010.

/S/ S. Allan Alexander
U.S. MAGISTRATE JUDGE